IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN DWIGHT** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| v. | : | **NO. 24-CV-2513** |
| | : | |
| **LARRY KRASNER,** *et al.*, | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 DECEMBER 5, 2024

**M E M O R A N D U M**

Kevin Dwight, a pretrial detainee in custody at the Philadelphia Detention Center, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against the Philadelphia District Attorney Larry Krasner, "House Arrest Agent Andrea Champion," the City of Philadelphia, and Philadelphia Prison Commissioner Michael Resnick in their official capacities.[1] Dwight also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Dwight leave to proceed *in forma pauperis* and dismiss the Amended Complaint.

**I.      FACTUAL ALLEGATIONS**[2]

Dwight alleges that "the events started on August 24, 2020" when he was arrested on charges filed by the Philadelphia District Attorney's Office ("DAO"), and "continued with the

---

[1] This case was opened when Dwight sent a letter to the Clerk of Court (ECF No. 1), which was deficient as a Complaint in a civil action. On July 2, 2024, the Court ordered Dwight to, *inter alia*, file a proper complaint with all defendants identified in the caption. (ECF No. 3.) Dwight complied and filed an Amended Complaint naming these Defendants. (ECF No. 4.) The Clerk of Court will be directed to add the Defendants to the case.

[2] Dwight used the form complaint available to unrepresented litigants to file his claims and included two typewritten attachments. (ECF No. 4.) The Court considers the entire submission to constitute the Amended Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Amended Complaint. Where the Court quotes from the Amended Complaint, punctuation, spelling, and capitalization errors will be cleaned up. The Court may also consider matters of public record when conducting a screening under § 1915. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Philadelphia Probation and Parole Office, and climaxed by medical staff at the Philadelphia Prison Systems." (Am. Compl. at 5.) Dwight contends that Krasner, who is responsible for filing criminal charges in Philadelphia and supervising DAO attorneys, allowed an Assistant District Attorney to file "incorrect charges of child molestation" against him even though "the complaining witness is forty-five years of age." (*Id*. at 13.) Dwight maintains that Krasner has refused to drop these charges[3] and has not responded to his correspondence "in complaints of this miscarriage of justice." (*Id*. at 4-5, 14.) Dwight's allegations concerning Champion are brief. He alleges that Champion failed to comply with an order entered by Judge Moore allowing house arrest. (*Id*. at 4-5.)

The remainder of Dwight's allegations focus on claims relating to the grievance process and inadequate medical care at the Philadelphia Detention Center. (*Id*. at 4-5.) Dwight asserts that he filed four grievances between December 13, 2023, and January 5, 2024, with "no positive actions by the Philadelphia Prison Systems staff." (*Id.* at 12.) He asserts that Resnick is the Philadelphia Prison Systems Commissioner and is responsible for seeing that adequate medical services are provided at the Philadelphia Detention Center. (*Id*.) Dwight alleges that Resnick failed to ensure that he was provided "adequate mental health and medical care," "direct or address medical complaints submitted through the prison grievance process," and "order medical to assist with conditions of illness." (*Id*. at 4-5, 12.) Lastly, Dwight alleges that the City of Philadelphia employs all Defendants and is responsible for oversight of employees and "training and polices." (*Id*. at 4-5.) As a result of these events, he suffered discomfort in his colon and lungs, and has

---

[3] A review of public records indicates that Dwight was arrested on August 24, 2020, for sexual assault and related charges for which he is awaiting trial. *Commonwealth v. Dwight*, CP-51-CR-0001167-2021 (C.P. Philadelphia).

mental health concerns. (*Id*. at 5.) Dwight seeks money damages, and an injunction compelling "proper medical and mental health accessibility." (*Id*.)

## II.   STANDARD OF REVIEW

The Court grants Dwight leave to proceed *in forma pauperis*.[4] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires a court to dismiss an amended complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the litigation,' '[the court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Dwight is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

[4] The Court initially denied *in forma pauperis* status because Dwight failed to provide a copy of his institutional account statement. That defect has now been cured. However, because Dwight is a prisoner, he must still pay the $350 filing fee for this case in installments as required by the Prison Litigation Reform Act.

### III. DISCUSSION

Dwight appears to assert constitutional claims since he cites 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

### A. *Official Capacity Claims for Money Damages*

#### 1. **Philadelphia District Attorney Lawrence Krasner**

Dwight names Lawrence Krasner in his official capacity as the Philadelphia District Attorney. A suit against Krasner in his official capacity is indistinguishable from claims against the governmental entity that employs him, here the Philadelphia DAO. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). As such, the official capacity claim must be dismissed with prejudice because the United States Court of Appeals for the Third Circuit has held that district attorney's offices in Pennsylvania are not entities subject to suit under § 1983. *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (holding that "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability"); *see also Briggs v. Moore*, 251 F. App'x 77, 79 (3d Cir. 2007) (*per curiam*) ("[T]he Monmouth County Prosecutor's Office is not

4

a separate entity that can be sued under § 1983."); *but see Harper v. City of Philadelphia*, No. 18-365, 2018 WL 5784549, at *2 (E.D. Pa. Nov. 2, 2018) ("District courts within the Third Circuit disagree about whether the DAO is a separate entity from the City of Philadelphia such that it can be sued separately under § 1983.").

### 2.     House Arrest Agent Andrea Champion

Dwight also brings claims against House Arrest Agent Andrea Champion[5] in her official capacity and seeks money damages as part of his relief.  In Pennsylvania, probation offices are part of the Judicial Branch of the Commonwealth.  *See Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("We have held that Pennsylvania's judicial districts, including their probation and parole departments," are "part of the Commonwealth government[.]").  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment.  *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court. Accordingly, Dwight's claims against Champion in her official capacity will be dismissed with prejudice as amendment would be futile.

---

[5]    Dwight also refers to Champion as a "P.O.," which the Court understands to mean "probation officer."  (*See* Am. Compl. at 4-5.)

### B. The City of Philadelphia

Dwight's claims against the City of Philadelphia also cannot proceed as pled. To state a claim for municipal liability, a plaintiff must allege that the City's policies or customs caused the alleged constitutional violation. *See Monell,* 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). Dwight "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

Dwight makes only vague, generalized, and conclusory allegations that are entirely insufficient to support a *Monell* claim against the City. Dwight asserts that the City failed with "oversight of employees", and it is responsible for "training and polices." (Am. Compl. at 4-5.) Dwight not only fails to identify a specific policy or custom of the City, but also fails to allege that he was injured due to that policy or custom, both of which are fatal to his claim. *See Groman*, 47 F.3d at 637 (holding that "vague assertions" of a policy or custom, without more, are not sufficient

6

to state a claim under *Monell*). Accordingly, Dwight's claims against the City are not plausible as pled and will be dismissed without prejudice.[6]

### C. Individual Capacity Claims

In drafting his Amended Complaint, Dwight checked the boxes on the form he used indicating that he seeks to name the Defendants only in their respective official capacities. For the reasons explained above, the official capacity claims against each Defendant will be dismissed. Dwight appears, however, not to have understood the implication of checking only the official capacity box for each Defendant. Because Dwight's Amended Complaint could be understood as seeking to raise a civil rights violation against Defendants Krasner, Champion, and Resnick in their individual capacities, the Court will liberally construe the Amended Complaint to assert a claim against these Defendants in their individual capacities as well. *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotations omitted)); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed event though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d

---

[6] Dwight also names Defendant Resnick in his official capacity as the Philadelphia Prison Commissioner. Claims against Resnick in his official capacity are indistinguishable from the claims against the City, the governmental entity who employs him. *See Graham,* 473 U.S. at 165-166 ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Thus, a suit against Resnick in his official capacity is duplicative of Dwight's claims against the City and will be dismissed with prejudice.

366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

### 1. Defendant Krasner

Dwight's claims against Krasner are based on his role as the Philadelphia District Attorney, which is the Office that brought the relevant criminal charges against Dwight, resulting in his arrest on August 24, 2020. The individual capacity claims against Krasner or any of his Assistant District Attorneys, must be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim because prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute immunity extends to the decision to initiate a prosecution, *id.* at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020). Moreover, District Attorneys, like Krasner, and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).

Because Dwight's claims against are based upon Krasner's actions as a prosecutor for bringing criminal charges behalf of the Commonwealth, Krasner is entitled to absolute immunity and the claims against him will be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim. Leave to amend will not be granted as it would be futile.

### 2. Defendant Champion

Dwight next alleges that Champion failed to comply with an alleged order entered by Judge Moore allowing house arrest. (Am. Compl. at 4-5.) Although a review of the public record indicates that Dwight's bail status was changed during the time of his confinement, it does not appear to show he was released to house arrest, or show any order entered by a Judge named Moore.[7] Dwight's claim that Champion acted to violate his rights is entirely undeveloped. He has not alleged facts that describe what happened to him, or what specific actions Champion took when allegedly failing to comply with an order. As pled, the Amended Complaint does not allege sufficient facts to suggest plausibly that Champion violated Dwight's constitutional rights when she failed to comply with a court order. Dwight will, however, be granted leave to amend on this claim if he desires to pursue it.

### 3. Defendant Resnick

Dwight appears to assert claims against Resnick for the manner in which his grievances were handled at the Philadelphia Detention Center and for failing to provide Dwight with adequate medical care through his supervisory authority as the Philadelphia Prison Commissioner.

#### a. Claims Based on Grievances

Dwight asserts that Resnick failed to "direct or address medical complaints submitted through the prison grievance process." (Am. Compl. at 4.) Any claims based on the handling of prison grievances against Resnick fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations such as those raised by Dwight predicated

---

[7] *See Commonwealth v. Dwight*, MC-51-CR-0015979-2020 (M.C. Philadelphia); *id.*, CP-51-CR-0001167-2021 (C.P. Philadelphia).

on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)). Moreover, a prison official's involvement in the grievance process is not sufficient to allege liability under § 1983 for the events that gave rise to the grievance. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."). All claims based on the handling of grievances are dismissed with prejudice.

### b.      Claims Based on Supervisory Authority

It appears that Dwight is also naming Resnick as a defendant merely because he holds a position of supervisory authority in the Philadelphia Prison System. Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient

to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*). Thus, the mere fact that Resnick was "in charge" of the Philadelphia Prison System does not state a plausible claim against Resnick for Dwight's issues with his medical complaints.[8]

Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in

---

[8] Moreover, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").

11

charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga*, 806 F.3d at 227. Since there is no allegation that Resnick was personally responsible for the medical care Dwight received at the Philadelphia Detention Center, any liability against him must be premised, if at all, on facts alleging deliberate indifference to the consequences of a policy he established that caused constitutional harm.

This type of liability requires a plaintiff to "identify a supervisory policy or practice that the supervisor failed to employ, and [allege] that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Barkes*, 766 F.3d at 317; *see also Chavarriaga*, 806 F.3d at 227. A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*; *Chavarriaga*, 806 F.3d at 227.

Dwight alleges only that Resnick is "responsible for not only custody and control but adequate mental health and care which he failed to do in this instance." (Am. Compl. at 12.) These allegations are insufficient to state a plausible claim that Resnick, acting with deliberate indifference to the consequences, established and maintained a policy, practice or custom which

directly caused Dwight to suffer a constitutional harm. To the extent that Dwight asserts a failure-to-train claim based on an act of a subordinate official, because the Court has determined that there are no plausible underlying claims, Resnick may not be held liable under this type of theory either. *Allen*, 804 F. App'x at 127. Accordingly, the individual capacity supervisory liability claims against Resnick will be dismissed without prejudice and with leave to amend.

## IV.     CONCLUSION

For the reasons set forth, the Court will grant Dwight leave to proceed *in forma pauperis* and will dismiss the Amended Complaint. All claims against Philadelphia District Attorney Lawrence Krasner, in both his official and individual capacity; the official capacity claims for money damages against House Arrest Agent Andrea Champion and Philadelphia Prison Commissioner Michael Resnick; and any claim based on grievances are dismissed, with prejudice. Dwight's individual capacity claims against Champion and Resnick and *Monell* claims against the City are dismissed, without prejudice. His request for injunctive relief is denied because he has not named a defendant who can provide that relief. Dwight is granted leave to file a Second Amended Complaint if he is capable of curing the defects the Court has identified in the claims dismissed, without prejudice.

An Order providing additional instructions on amendment will be entered.

*NITZA I. QUIÑONES ALEJANDRO, J.*