IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN DWIGHT** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| v. | : | **NO. 24-CV-2513** |
| | : | |
| **LARRY KRASNER,** *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                         MAY 9, 2025

Currently, before the Court is a Second Amended Complaint filed by *pro se* Plaintiff Kevin Dwight alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 related to his pending criminal case and the medical care and mental health treatment he has received while incarcerated. For the following reasons, the Court will dismiss the Second Amended Complaint.

I.     **FACTUAL ALLEGATIONS[1] AND PROCEDURAL HISTORY**

---

[1]     After the Court dismissed Dwight's Amended Complaint and granted him leave to amend certain claims, *see* ECF No. 12, Dwight filed an amended complaint, (*see* ECF No. 16), and subsequently filed a second amended complaint on March 12, 2025, (*see* ECF No. 19). An amended complaint, once submitted to the Court, supersedes the prior pleading and serves as the governing pleading in the case. *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (*per curiam*) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted); *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings"). Here, for the reasons set forth, the Second Amended Complaint filed on March 12, 2025, is the operative pleading and supersedes the Amended Complaint filed on February 19, 2025.

Dwight used the form complaint available to unrepresented litigants to file his Second Amended Complaint and attached five additional pages. (ECF No. 19.) The Court considers the entire submission to constitute the Second Amended Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. The factual allegations set forth in this Memorandum are taken from Second Amended Complaint. The Court may also consider matters of public record when conducting a screening under § 1915. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Dwight, a pretrial detainee in custody at the Philadelphia Detention Center, initiated this civil rights action pursuant to § 1983, naming as Defendants Philadelphia District Attorney Larry Krasner, House Arrest Agent Andrea Champion, the City of Philadelphia, and Philadelphia Prison Commissioner Michael Resnick.[2]

In a December 5, 2024, Memorandum and Order, the Court granted Dwight leave to proceed *in forma pauperis* and dismissed his Amended Complaint for failure to state a claim. (*See* ECF Nos. 11, 12.) The Amended Complaint was dismissed, *in part*, with prejudice, and, *in part*, without prejudice. (*See* ECF No. 12 at 2.) All claims raised against Philadelphia District Attorney Lawrence Krasner, in both his official and individual capacity, all official capacity claims against House Arrest Agent Andrea Champion and Philadelphia Prison Commissioner Michael Resnick, and all claims against Resnick based on the handling of grievances were dismissed with prejudice. (*Id*.) All other claims were dismissed without prejudice. (*Id*.)

Specifically, there were three claims that were dismissed without prejudice. The first claim was for municipal liability against the City of Philadelphia. *See Dwight v. Krasner*, No. 24-CV-2513, 2024 WL 4988974, at *3 (E.D. Pa. Dec. 5, 2024). The Court explained that to state a claim for municipal liability, Dwight "must allege that the City's policies or customs caused the alleged constitutional violation." *Id*. (citing *Monell v. N.Y.C. Dept. of Soc. Servs*., 436 U.S. 658, 694 (1978)). Dwight "'must identify [the] custom or policy, and specify what exactly that custom or policy was' to satisfy the pleading standard." *Id*. (quoting *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)). The Court reiterated that "it is not enough, however, to allege the

---

[2] This case was initially filed by a letter Complaint, which was deficient as a Complaint in a civil action. (ECF No. 1). On July 2, 2024, the Court ordered Dwight to, *inter alia*, file a proper complaint with all defendants identified in the caption. (ECF No. 3). Dwight substantially complied by filing an Amended Complaint naming these Defendants. (ECF No. 4).

2

existence of a policy or custom. 'A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries.'" *Id*. (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (internal citation omitted). The Court found that "Dwight ma[de] only vague, generalized, or conclusory allegations that are entirely insufficient to support a *Monell* claim against the City." *Id*. When dismissing Dwight's claim against Champion in her individual capacity, the Court found that this claim was "entirely undeveloped. He ha[d] not alleged facts that describe what happened to him, or what specific actions Champion took when allegedly failing to comply with an order." *Dwight,* 2024 WL 4988974, at *4. The third claim dismissed without prejudice was Dwight's individual capacity supervisory liability claims against Resnick. *Id*. at *5-6. Because there was "no allegation that Resnick was personally responsible for the medical care Dwight received at the Philadelphia Detention Center," the Court determined that "any liability against him must be premised, if at all, on facts alleging deliberate indifference to the consequences of a policy he established that caused constitutional harm." *Id.* at *6. The Court found that Dwight's allegations were "insufficient to state a plausible claim against Resnick" based on that theory of supervisory liability. *Id*.

Dwight was given leave to file a second amended complaint as to the claims dismissed without prejudice, but the Court specifically ordered that he "may ***NOT*** reassert any claim that has already been dismissed with prejudice." (ECF No. 12 at 2-3 (emphasis in original.)) He ultimately filed the pending second amended complaint.[3] In his Second Amended Complaint ("Second Am.

---

[3] Dwight was ordered to file his second amended complaint within thirty days from the date of the Court's December 5, 2024, Order. (ECF No. 12 at 2, 4.) On January 31, 2025, the Court dismissed this case without prejudice based on Dwight's failure to file his second amended complaint. (ECF No. 13.) On February 7, 2025, Dwight filed a Motion for Emergency Relief requesting relief related to his pending state case. (ECF No. 14.) The Court denied his request for emergency relief but vacated its dismissal Order to give Dwight a second opportunity to file a second amended complaint. (ECF No. 15 at 1-2.) On February 19, 2025, Dwight filed an amended complaint dated on December 24, 2024, *see* ECF No. 16, and filed motions requesting this case be reopened and for the Court to appoint him counsel, *see* ECF Nos. 17, 18.

Compl."), Dwight names the following Defendants:[4] Philadelphia District Attorney's Office ("DAO"), Philadelphia Department of Adult Probation and Parole ("Probation and Parole"), Philadelphia Prisons System, Yes Care Medical (Prison Medical Contractor) ("Yes Care"), Philadelphia Assistant District Attorney ("ADA") Juna Murray, House Arrest Agent Andrea Champion, Medical Prescriber Helen Sarskaya, and Psychiatrist Ms. Teri ("Dr. Teri") in their respective official capacities. (*See* Second Am. Compl. at 1-3.) The individual defendants are also named in their respective individual capacities. (See *id.* at 2-3.) He did not name as defendants the City of Philadelphia or Resnick, nor did he bring amended claims against them.

Dwight alleges that the events giving rise to his claims arose at the Philadelphia Detention Center on December 8, 2023, and mentions Curran-Fromhold Correctional Facility ("CFCF") as another facility where his claims occurred without further detail. (*See id.* at 4, 6.) He also alleges August 24, 2020, as a date giving rise to his claims, which appears to be the date he was arrested for his underlying state criminal case.[5] (*See id*. at 5.) It is unclear which date coincides with which claim. Dwight contends that Defendants Philadelphia DAO and ADA Juna Murray abused their prosecutorial charging discretion and "allowed unfounded charges to be filed" against him "in the form of child molestation when the complaining witness was a [forty-five-year-old] woman." (*Id*. at 12.) He claims that "this charge was the cause of bail being escalated" and the charge "was not

---

Dwight alleges he sent an amended complaint through the United States Postal Service on December 24, 2024, *see* ECF No. 17 at 1, which the Court has no record of receiving. On March 12, 2025, Dwight filed a second amended complaint, *see* ECF No. 19, which serves as the operative pleading for the reasons explained above in footnote 1.

[4]     Certain Defendants are named only in the heading of the operative pleading, *see* Second Am. Compl. at 1, and others are listed only in "The Defendants" section provided on the form, *id.* at 2-3. The Court recognizes each Defendant that Dwight listed in both sections out of an abundance of caution.

[5]     A review of public records indicates that Dwight was arrested on August 24, 2020, for sexual assault and related charges for which he is awaiting trial. *Commonwealth v. Dwight*, CP-51-CR-0001167-2021 (C.P. Philadelphia); *Commonwealth v. Dwight*, MC-51-CR-0015979-2020 (M.C. Philadelphia).

4

removed for [three] years and [seven] months[,] which violated [his] constitutional rights and civil rights to reasonable bail." (*Id*.)  He asserts that the Philadelphia DAO must "ensure correct charges are filed and approved," and their failure to do so was a violation of his constitutional rights by "this malicious prosecution." (*Id*.)

Dwight's allegations concerning Defendants House Arrest Agent Andrea Champion and Probation and Parole are brief.  He alleges that they refused "to honor, Honorable Judge Monica Gibbs['s] Order to allow [him] to attend his treatment and appointments for chronic illnesses, cancer diagnosis, spinal disease and etcet[e]ra." (*Id*.)  As a result, they violated his due process rights and Probation and Parole "knew or should have known this was occurring under their watch which makes them compliant in violating his due process and constitutional rights against cruel and unusual punishment." (*Id*.)

The remainder of Dwight's allegations focus on claims relating to the grievance process and inadequate medical care and mental health treatment provided by Defendants Yes Care, a medical contractor for the Philadelphia Prison Systems, Medical Prescriber Helen Sarskaya, and Psychiatrist Ms. Teri.  (*See id*. at 7, 14-15.)  Dwight asserts that he filed grievances with "no positive results" or "corrective actions taken" for "refused medical treatment for colon cancer and mental health treatment, for depression, anxiety, stress[,] torture, systematic ass[a]ult, poisoning, [and] the use of food and medication for punishment." (*Id.* at 7.)  He further alleges that Yes Care and the Philadelphia Prison System "failed to ensure that [he] receive[d] medical and mental health care despite numerous grievances submitted asking the administration to intervene with [him], Yes Care, and medical prescriber Helen Sarskaya.  The medical provider acted arbitrarily in not getting proper and adequate treatment of [his] chronic illnesses, spinal disease, [and] [] colon/lung [cancer]." (*Id*. at 14.)  He claims that "this was complicated by the mental health provider Dr. Teri

whom failed to adequately evaluate [his] present and current mental state and used diagnosis from 1995 under A.K.A. Kevin Wright in administering medication." (*Id*.)  He asserts both Defendants Sarskaya and Dr. Teri failed to correctly evaluate and treat him and did not "assist a chronically ill incarcerated person whom suffers also from mental health issues." (*Id*. at 15.)  Dwight claims that Philadelphia Prison System "should have created or enforced a policy that requires Yes Care to provide correct adequate evaluations and treatment for chronic care incarcerated persons," (*id.* at 14), and Yes Care should have known about "their policy of reviewing charts prior to state inspectors." (*Id*. at 15.)

As a result of these events, his constitutional rights were violated, and he suffered post-traumatic stress disorder, anxiety, despair, depression, paranoia, "irreversible damage to his reputation," and his medical conditions were left untreated.  (*Id*. at 5.)  Dwight seeks money damages, and "immediate release back into house arrest."[6]  (*Id*.)

## II.   STANDARD OF REVIEW

Dwight is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii).  This statute requires the Court to dismiss the Second Amended Complaint if it fails to state a claim.  Whether a second amended complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

---

[6]   Dwight's request to be released must be dismissed.  His only avenue for that type of relief in federal court is by a *habeas* petition after exhausting state remedies. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of *habeas corpus*."); *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (stating that a § 1983 complaint that seeks release may not proceed because the proper vehicle for such claims is a petition for writ of *habeas corpus*); *see also Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) ("Where a petitioner seeks release from detention, *habeas* (not a § 1983 action seeking release) is proper.").

determine whether the Second Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court must accept the facts alleged in a *pro se* second amended complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that second amended complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Further, the Court construes the allegations of a *pro se* complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)). However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### III.   DISCUSSION

Dwight asserts constitutional claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "Section 1983 is not a source of

7

substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

    A.    **Philadelphia Prison System**

The claims against the Philadelphia Prison System cannot proceed as pled. As the Third Circuit has held, "the Philadelphia Prison System, [a] department[ ] of the City of Philadelphia itself, [is] not [a] proper defendant[ ]" in an action brought under § 1983. *Russell v. City of Philadelphia*, 428 Fed. App'x 174, 177 (3d Cir. 2011) (citing 53 Pa. Con. Stat. Ann. § 16257; *Bey v. City of Philadelphia*, 6 F. Supp. 2d 422, 423 (E.D. Pa. 1998)); *see also Durham v. Philadelphia Prison Sys.*, No. 18-2113, 2018 WL 3105589, at *2 (E.D. Pa. June 25, 2018) (explaining that the "Philadelphia Prison System is not an entity that is subject to suit separate from the City of Philadelphia.") (citing 53 Pa. Cons. Stat. Ann. § 16257). Because the Philadelphia Prison System is not considered a "person" for purposes of § 1983, *Durham*, 2018 WL 3105589 at *2 (citing *Peele v. Philadelphia Prison Sys.*, No. 12-4877, 2015 WL 1579214, at *2 (E.D. Pa. April 8, 2015)), Dwight's claim against it is dismissed with prejudice. In any event, even if he had named the City as a Defendant, Dwight has not clearly alleged a municipal policy or custom that led to a violation

8

of his constitutional rights.  *See Monell*, 436 U.S. at 694 (plaintiff "must allege that the City's policies or customs caused the alleged constitutional violation.").

### B. Official Capacity Claims for Money Damages

#### 1. *Philadelphia DAO and ADA Juna Murray*

Dwight names the Philadelphia DAO and ADA Juna Murray in her official capacity.  A suit against Murray in her official capacity is indistinguishable from claims against the governmental entity that employs her, here the Philadelphia DAO.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell,* 436 U.S. at 690 n. 55).  As such, the official capacity claim must be dismissed with prejudice because, as noted in the Court's prior opinion, *see Dwight*, 2024 WL 4988974 at *2, the United States Court of Appeals for the Third Circuit has held that district attorney's offices in Pennsylvania are not entities subject to suit under § 1983.  *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (holding that "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability"); *see also Briggs v. Moore*, 251 F. App'x 77, 79 (3d Cir. 2007) (*per curiam*) ("[T]he Monmouth County Prosecutor's Office is not a separate entity that can be sued under § 1983."). *But see Harper v. City of Philadelphia*, No. 18-365, 2018 WL 5784549, at *2 (E.D. Pa. Nov. 2, 2018) ("District courts within the Third Circuit disagree about whether the DAO is a separate entity from the City of Philadelphia such that it can be sued separately under § 1983.").  In any event, Dwight has failed to articulate any basis for municipal liability against the DAO here.  *See Monell*, 436 U.S. at 694 (to state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation).

### 2. *House Arrest Agent Andrea Champion and Probation and Parole*

Even though Dwight was not given leave to reassert any claim that has already been dismissed with prejudice, he again brings claims against House Arrest Agent Andrea Champion in her official capacity and seeks money damages as part of his relief. This claim has already been dismissed with prejudice by the Court and will be dismissed again on the same grounds.[7] *See Dwight*, 2024 WL 4988974, at *3. He also brings a claim against Probation and Parole, which will be dismissed for similar reasons. In Pennsylvania, probation offices are part of the Judicial Branch of the Commonwealth. *See Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("We have held that Pennsylvania's judicial districts, including their probation and parole departments," are "part of the Commonwealth government[.]"). The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments are immune from suits filed in federal court. "Furthermore, even if the Eleventh Amendment did not bar these claims, the Board of Probation and Parole is also not a "'person' within the meaning of section 1983." *Wyatt v. Dep't of Prob. & Parole,* No. 19-5460, 2020 WL 2307351, at *4 (E.D. Pa. May 8, 2020) (quoting *Fenton v. Pennsylvania Dep't of Corr.*, No. 18-5484, 2019 WL 398929, at *4 (E.D. Pa. Jan. 31, 2019). Accordingly, Dwight's claims against Probation and Parole will be dismissed with prejudice as amendment would be futile.

---

[7] Any claims based on the handling of grievances were also dismissed by the Court with prejudice and will not be readdressed to the extent Dwight intended to reallege those claims. *See Dwight,* 2024 WL 4988974, at *5.

### C. Individual Capacity Claims

#### 1. *ADA Murray*

Dwight's claim against Murray fails because it is brought against Murray based on her role as a Philadelphia ADA, acting on behalf of the Office that brought the relevant criminal charges against him, resulting in his arrest on August 24, 2020. As the Court previously explained to Dwight when he attempted to bring a similar claim against Philadelphia District Attorney Lawrence Krasner in his Amended Complaint, "[t]he individual capacity claims against Krasner, or any of his Assistant District Attorneys, must be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim because prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are 'intimately associated with the judicial phase of the criminal process' such as 'initiating a prosecution and . . . presenting the State's case.'" *Dwight*, 2024 WL 4988974, at *4 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). Absolute immunity extends to the decision to initiate a prosecution, *id.* at 431, including, "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020).

Because Dwight's claims against Murray are based upon her actions as a prosecutor for bringing criminal charges against him on behalf of the Commonwealth, and perhaps, for how she has been handling the prosecution, Murray is entitled to absolute immunity and the claims against her will be dismissed. Leave to amend will not be granted as to this claim because it would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002).

### 2. House Arrest Agent Champion

Dwight alleges that Champion failed to comply with an alleged order entered by Judge Gibbs allowing him to attend appointments and treatments related to his medical conditions, presumably while on house arrest. (*See* Second Am. Compl. at 13.) Although a review of the public record indicates that Dwight's bail status was changed during the time of his confinement and a motion to modify his house arrest was granted,[8] Dwight's claim that Champion acted to violate his rights is undeveloped. As the Court explained to him when dismissing a similar claim against Champion, Dwight "has not alleged facts that describe what happened to him, or what specific actions Champion took when allegedly failing to comply with an order." *Dwight,* 2024 WL 4988974, at *4. Even under the most liberal reading of the Second Amended Complaint, Dwight does not allege sufficient facts to suggest plausibly that Champion violated Dwight's constitutional rights. Indeed, he does not explain what the Court's Order said, what care he required, and how Champion's actions interfered with that care or otherwise violated his rights. He makes only vague, generalized, and conclusory allegations that are entirely insufficient. *See Falcone v. Dickstein*, 92 F.4th 193, 202 (3d Cir. 2024) (in determining whether a complaint states a claim, "we disregard unsupported conclusions or legal conclusions couched as factual allegations").

### D. Yes Care, Medical Prescriber Helen Sarskaya, and Psychiatrist Ms. Teri

Dwight's remaining claims are best understood as arising from alleged deliberate indifference to his medical needs and mental health needs against Defendants Yes Care, Sarskaya, and Dr. Teri.[9] *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We

---

[8] *See Dwight*, MC-51-CR-0015979-2020. Dwight also attached one page of the public record to his Second Amended Complaint reflecting this information. (*See* Second Am. Compl. at 16.)

[9] As an initial matter, to the extent that Dwight intended to assert claims against Sarskaya and Dr. Teri, employees of Yes Care, in their "official capacities," such claims are not cognizable because

apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."). To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[10] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

---

Yes Care is a private entity. *See Kreis v. Northampton Cnty. Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (stating that official capacity claims are "inapplicable to suits against private parties where the entity is also susceptible to suit") (citing *Owens v. Connections Cmty. Support Programs, Inc.,* 840 F.Supp.2d 791, 796 (D. Del. 2012)) ("Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official action [and that] concept . . . is inapplicable to suits against private parties where the entity is also susceptible to suit."). Therefore, the official capacity claims against Sarskaya and Dr. Teri must be dismissed.

[10]    As it appears that Dwight is a pretrial detainee, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

As pled, Dwight's allegations are vague and entirely undeveloped to proceed. He alleges that "the medical provider," presumably Sarskaya, "acted arbitrarily in not getting proper and adequate treatment of [his] chronic illnesses, spinal disease, [and] [] colon/lung [cancer]," and "this was complicated by the mental health provider Dr. Teri whom failed to adequately evaluate [his] present and current mental state and used diagnosis from 1995 under A.K.A. Kevin Wright in administering medication." (Second Am. Compl. at 14.) He generally asserts both Sarskaya and Dr. Teri failed to correctly evaluate and treat him and did not "assist a chronically ill incarcerated person whom+ suffers also from mental health issues." (*Id*. at 15.) Assuming that Dwight's medical needs were serious, and construing the allegations liberally, the allegations nevertheless fail to support a plausible claim that either Sarskaya or Dr. Teri were deliberately indifferent to his medical needs. He does not state factual allegations regarding when the medical care was denied, specific interactions or conversations with Sarskaya or Dr. Teri, what medical care or treatments they failed to provide, and how they were aware of and disregarded an excessive risk to his health. The allegation that Sarskaya and Dr. Teri failed to provide proper care is conclusory and fails to allege a plausible claim. *See Iqbal*, 556 U.S. at 678. These claims will be dismissed. However, because it may be possible for Dwight to allege additional facts to demonstrate a plausible claim against Sarskaya and Dr. Teri, the claims against them will be dismissed without prejudice and he will be permitted an opportunity to file a third amended complaint.

As his claims relate to Yes Care, a private corporation under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances. The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat

superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor)). Rather, in order to hold a private health care company like Yes Care liable for a constitutional violation under § 1983, Dwight must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted). A plaintiff may also state a basis for liability against an entity like Yes Care by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc.*, 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom., Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019).

Dwight makes only vague, generalized, and conclusory allegations that are entirely insufficient to support his claim against Yes Care. He alludes generally to policies by claiming that Philadelphia Prison System "should have created or enforced a policy that requires Yes Care to provide correct and adequate evaluations and treatment for chronic care incarcerated persons,"

15

(Second Am. Compl. at 14), and Yes Care should have known about "their policy of reviewing charts prior to state inspectors." (*Id*. at 15.)  It is unclear if the policies he refers to are even attributable to Yes Care.  It is also unclear how any alleged policy related to reviewing charts impacted Dwight's medical care.  Further, his failure to support a plausible underlying claim that either Sarskaya or Dr. Teri were deliberately indifferent to his medical needs is an additional indication that there is a lack of sufficient factual allegations against Yes Care.  *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (Crucially, an individual claiming a *Monell* violation must demonstrate "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.").

## IV.     CONCLUSION

For the reasons stated above, the Court will dismiss the Second Amended Complaint.  All claims against Probation and Parole, the Philadelphia DAO, the Philadelphia Prisons System, House Arrest Agent Andrea Champion, Philadelphia ADA Juna Murray, in both her official and individual capacity, will be dismissed.  Since Dwight has already been given an opportunity to amend these claims, and since his amended pleading added little to his first pleading, he will not be given further leave to amend on these claims.  *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").  Dwight's official capacity claims against Sarskaya and Dr. Teri will also be dismissed with prejudice as amendment would be futile.  However, Dwight's claims against Sarskaya and Dr. Teri in their respective individual capacities, and the claims against Yes Care will be dismissed without prejudice.  He will be provided <u>one more opportunity</u> to amend the claims if he is capable of curing the defects the Court has identified in these claims dismissed <u>without prejudice</u>.  Dwight may <u>not</u> reassert any claim that has already

been dismissed with prejudice.  Dwight's remaining motions to reopen this case and for the Court to appoint him counsel are denied as moot.

      An Order providing additional instructions on amendment will be entered.

*NITZA I. QUIÑONES ALEJANDRO, J.*